**Samuel M. LONGIOTTI; Betty C. Longiotti, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 86–2579.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 5, 1987.

Decided May 19, 1987.

Rehearing and Rehearing In Banc Denied June 15, 1987.

H. Bryan Ives, III (Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., on brief), for appellants.

David English Carmack, Dept. of Justice (Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup, Kenneth L. Greene, Dept. of Justice, Washington, D.C., Kenneth W. McAllister, U.S. Atty., Greensboro, N.C., on brief), for appellee.

Before WIDENER and WILKINSON, Circuit Judges, and SENTELLE, United States District Judge for the Western

District of North Carolina, sitting by designation.

WILKINSON, Circuit Judge:

Appellants Samuel M. and Betty C. Longiotti claim a refund of federal income taxes based on certain net operating loss carrybacks. The district court granted the government's motion for summary judgment on the ground that the claim was barred by the thirty-nine and a half month statute of limitations set out in section 6511(d)(2)(A) of the Internal Revenue Code. We affirm.

## I.

Taxpayers suffered net operating losses (NOLs) in 1973 and 1974. They deducted these losses as carryovers in 1976, 1978 and 1979. In 1975, the IRS issued a notice of deficiency for $324,423.57 on taxpayers' 1972 federal income taxes. In 1976, taxpayers filed suit in the Tax Court to contest this ruling. During the lawsuit, taxpayers never contended that their 1973 and 1974 NOLs should be carried back to reduce their 1972 deficiency.

In October, 1979, the parties settled the case by computing the 1972 deficiency as $187,120.22. The Tax Court entered judgment in that amount on January 3, 1980, and Samuel Longiotti paid the 1972 deficiency on November 30, 1982. On October 3, 1984, taxpayers filed a claim for refund, alleging that the 1973 and 1974 NOLs should have been carried back to 1972. The Commissioner denied the refund claim, and taxpayers filed a suit for the refund in federal district court.

The district court granted summary judgment for the government, holding that the statute of limitations had run on the refund claim and that taxpayers were not eligible for mitigation, 635 F.Supp. 840.

## II.

The government argues that under section 6511(d)(2)(A) of the Code, taxpayers had to bring their refund suit in district court within thirty-nine and a half months following the end of the taxable year of the net operating loss. Taxpayers, on the other hand, contend that that section must be read to permit a refund claim to be filed within two years of the date the deficiency was paid. We believe the plain language of the statute supports the government's view.

Normally, the statute of limitations for filing a tax refund claim is "three years from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a). Since the existence of net operating losses might not become known until after the § 6511(a) period had expired, Congress enacted a special limitations provision to govern such losses. *Mar Monte Corp. v. United States*, 503 F.2d 254, 256 (9th Cir.1974). If the refund is attributable to net operating loss carrybacks, "in lieu of the 3–year period of limitation prescribed in subsection (a), the [limitations] period shall be that period which ends with the expiration of the 15th day of the 40th month" following the end of the taxable year of the net operating loss which results in the carryback. 26 U.S.C. § 6511(d)(2)(A). Under section 6511(d)(2)(A), the thirty-nine and a half month period substitutes for the normal three years from filed period set out in section 6511(a), but the two-years-from-payment period in section 6511(a) is not affected. The limitations period for refunds based on NOL carrybacks is thus ordinarily either thirty-nine and a half months from the end of the NOL year or two years from when the tax is paid. *Nelson v. United States*, 757 F.2d 1537 (5th Cir.1985); Rev.Rul. Rul 65–281, 1965–2 C.B. 44.

■ In this case, however, a further statutory provision applies. Under section 6511(d)(2)(B)(i), if the allowance of a credit or refund attributable to an NOL carryback "is otherwise prevented by the operation of any law or rule of law ..., such credit or refund may be allowed or made if a claim therefor is filed within the period provided in subsection A of this paragraph." Taxpayer concedes that the Tax Court judgment with regard to the deficien-

cy operates as "a law or rule of law" under section 6512(a) for purposes of section 6511(d)(2)(B)(i). Under 6511(d)(2)(B)(i), therefore, taxpayers may bring the refund suit if they are within the limitations period set out in section 6511(d)(2)(A). The question is whether the reference in 6511(d)(2)(B)(i) to 6511(d)(2)(A) restricts taxpayers to the thirty-nine and a half months limitations period.

Taxpayers claim that subsection A explicitly provides for the thirty-nine and a half month period and implicitly provides for the two-years-from-payment period. They contend that Congress enacted section 6511(d)(2)(B) to allow taxpayers to take advantage of NOL carrybacks normally barred by res judicata or by some other rule of law. According to taxpayers, there is nothing to suggest that section 6511(d)(2)(B) was intended to make the statute of limitations more restrictive by eliminating the two-years-from-payment period when taxpayers file a petition for redetermination.

The plain language of the relevant provisions, however, contradicts taxpayers' position. Section 6511(d)(2)(B)(i) refers to "the period" in 6511(d)(2)(A). The single period provided in section 6511(d)(2)(A) is thirty-nine and a half months. There is no reference to a two-years-from-payment period in that section, and we decline the invitation to imply what Congress has not enacted. The fact that the two-years-from-payment period might apply in the absence of a prior Tax Court decision is another matter altogether. Here there was a prior decision, and Congress enacted a provision to address precisely these circumstances.

The same conclusion was reached in *Mar Monte Corp. v. United States*, 503 F.2d 254 (9th Cir.1974). In *Mar Monte*, the taxpayer corporation filed a petition for redetermination in the Tax Court for tax year 1959. The parties reached a settlement on the deficiency, and the taxpayer paid it in 1966. Later the same year, the taxpayer filed in district court a refund claim in which it attempted to carry back to 1959 its NOLs for 1960, 1961 and 1962. The Ninth Circuit held the suit was barred by the

thirty-nine and a half month statute of limitations set out in subsection A. Relying on the plain meaning of subsection A and on the legislative history, that court rejected taxpayer's argument that the two-years-from-payment period was implicit in subsection A.

The reasoning of the *Mar Monte* court is instructive. The court noted that Congress enacted section 6511(d)(2)(B) to afford relief when NOLs arose *after* a Tax Court decision, and indeed the provision seeks to ensure that taxpayers will not be precluded by a prior decision from claiming NOLs before they even learn about them. Congress did not address the situation where, as here, the NOLs were realized *before* taxpayers filed their initial action. *Mar Monte*, 503 F.2d at 258.

■ In this case, taxpayers should have claimed their net operating loss carrybacks in the Tax Court—the very forum in which they brought suit to resolve their 1972 tax liability. Instead, they agreed to a settlement on their 1972 deficiency without raising the possibility of carrying back the NOLs to that year. *See Family Group, Inc. v. United States*, 416 F.Supp. 1170, 1172 (E.D.N.Y.1976) (plaintiffs knew of net operating losses and could have sought appropriate offset by raising NOL carryback at Tax Court proceeding). Taxpayers candidly "concede they could have made their claim prior to the expiration of the statute of limitations; they wish they had." Their failure to do so does not permit this court to disregard the statutory limitations period that Congress enacted to govern claims of this character.

### III.

■ Taxpayers argue that, if their refund suit is barred by the thirty-nine and a half month statute of limitations, they are entitled to mitigation under sections 1311–14 of the Internal Revenue Code, 26 U.S.C. §§ 1311–14. The mitigation provisions permit the correction of an error made in a prior tax year even though the ordinary limitations period has run. *Chertkof v. Commissioner*, 649 F.2d 264, 267 (4th Cir. 1981); *O'Brien v. United States*, 766 F.2d

1038, 1041 (7th Cir.1985). They do not, however, constitute general equitable exceptions to statutory limitations periods, and the party seeking to invoke them bears the burden of demonstrating that their requirements have been satisfied. *O'Brien v. United States,* 766 F.2d at 1042. Here taxpayers have failed to carry that burden.

■ Mitigation is permitted when three elements are present: 1) there must be "a determination" of tax liability as defined in 26 U.S.C. § 1313(a)(1)–(4); 2) the determination must fall within one of the circumstances of adjustment described in 26 U.S.C. § 1312(1)–(7); and 3) depending on which circumstance of adjustment is found, either an inconsistent position must be maintained by the party against whom mitigation will operate, 26 U.S.C. § 1311(b)(1), or the correction of the error must not have been barred at the time the party for whom mitigation will operate first maintained its position, 26 U.S.C. § 1311(b)(2). The government argues that none of the three mitigation elements is present. We need not rule so broadly, because we agree that taxpayers failed to establish a necessary circumstance of adjustment under 26 U.S.C. § 1312(4).

Section 1312(4) allows mitigation in the case of a double disallowance of a deduction or credit. This situation arises when a "determination disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year." 26 U.S.C. § 1312(4). Assuming, *arguendo*, that a "determination" has been made, taxpayers urge that the denial of their refund claim burdens them with a double disallowance. Taxpayers assert that, although the 1973 and 1974 NOLs were carried forward to 1976, 1978 and 1979, the NOLs were not exhausted.* They argue that the effect of

disallowing the NOLs' use in 1972 is to disallow the deduction of the unused portion of the 1973 NOL after 1978 and of the 1974 NOL after 1979.

This situation, however, does not constitute a double disallowance within the meaning of section 1312(4). The bar to the use of the NOLs for 1972 did not disallow a deduction which should have been allowed, but was not allowed, in another year. The "determination," whether by the Commissioner or the district court, involved only one year—1972. It did not address the use of the NOLs in any other year. Taxpayers were still able to carry the NOLs forward, and, in fact, they did so to the extent the law permitted.

Congress did not intend the mitigation provisions to provide relief in every situation where the expiration of a statute of limitations precludes a claim. "Such periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." *Kavanagh v. Noble,* 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150 (1947). Statutes of limitations "are an indispensable part of practical tax administration" which may of necessity bar taxpayers from claiming refunds and the government from collecting revenue. *Olin Mathieson Chemical Corp. v. United States,* 265 F.2d 293, 296 (7th Cir.1959). At some point the interest of a party in pursuing a claim yields to the interest of the public in putting claims to rest.

The judgment of the district court is AFFIRMED.

---

\* Taxpayers carried part of their $912,420 NOL in 1973 forward to 1976. Their taxable income in that year was $670,108, and they deducted that amount of the 1973 NOL. They carried the remaining $242,312 of the 1973 NOL forward to 1978. Their taxable income in that year, however, was only $238,912, leaving $3,400 of the 1973 NOL to expire unused. Taxpayers' NOL for 1974 was $2,157.435. They deducted $881,-785 in 1979, leaving $1,275,640 to expire unused.

In their petition for redetermination, taxpayers sought to carry the 1973 and 1974 NOLs back to 1972. Their taxable income for 1972 was $1,211,770. They could have exhausted all $912,420 of the 1973 NOL and $299,350 of the 1974 NOL by carrying them back to 1972. Taxpayers then could have carried $909,010 of the remaining $976,290 forward to 1976, 1978 and 1979. The amount that would expire unused under taxpayers' formulation would be $67,280.